SHANNON, Judge.
This is an appeal by the defendant below from a judgment against him in a negligence action. There are only two points on appeal; (1) where a buyer purchased from the defendant used car dealer a used automobile under the executed written instrument, designated “Used Car Order”, here involved, and while driving said automobile had an accident, should the issue of ownership of said automobile have been determined by the court and not the jury, and (2) did plaintiff prove by a preponderance of the evidence that defendant owned the automobile in question at the time of the accident?
The first question, if the facts justified, would be answered in favor of the appellant, but the facts are not as simple as the question leads one to believe. During the late evening on February 12, 1958, Jimmie Lee Sapp executed a “Used Car Order”, and the defendant, K. H. Fricker, in the used car business likewise signed. In the “Used Car Order” the following language was contained:
“Please enter my order for a good used car.
Make Model Type Year
Chev._Con_Coupe_48
Motor No. Serial No. License or Title
No. 1-181554
Cash Price Of Car_165.00
Accessories and Desired Changes to Insure Complete Satisfaction of This Transaction
Tax_1.65
Buyer accepts responsibility
This car is not insured
Total Cash Price_165.00
Deposit on Order
Used Car Allowance_$ 50
Less Bal. Due on My Car $ 40
Cash on Delivery
Record of Car Trad-
ed in_Total Credit 10.00
Make Year
Cushman 52_Balance Due
Motor No. Type Finance
_Charges_
Serial No. Model Amount of
Contract 155.00
To Be Paid in 19 Payments of $ 8 weekly
“We will do our best to stand behind all verbal agreements made by our salesmen. All promises made in front of any witness in our employ, will be as binding as if in writing. The above car has been test driven and found very serviceable. Should any reliable garage find any part of this car has *696 been doctored to conceal damages or anything not caused by normal wear, you will find us ready to place our mechanic at your disposal to correct the matter completely.
“Should this order be cancelled your deposit will be transferred to any other car or held by us at 10 per cent annum until a satisfactory automobile can be found. No person however will sustain financial loss of a deposit, as your satisfaction is our first consideration.
“I certify that I am 21 years of age and that my trade in (if any) is free of all incumbrances except as noted above.”
On February 13, 1958, Sapp brought the car back, complaining of some trouble with the brakes. Fricker’s mechanic either fixed or tried to fix them, but Sapp, according to his testimony, decided that he did not want the car. In any event he had not paid the dealer any money, and he testified that the dealer persuaded him to try the car out until Saturday, February 15, and that if he decided to take it, the title would then be transferred to him. After Fricker’s mechanic fixed or attempted to fix the brakes on Thursday morning, Sapp was involved in the accident Friday afternoon. Thereafter Fricker salvaged the automobile. At the trial Sapp testified for the plaintiff, and Fricker testified in his own behalf. At the conclusion of the plaintiff’s testimony and again at the conclusion of all the testimony the defendant made a motion for directed verdict, which was refused, and the case was given to the jury with instructions on the interpretation of the contract.
In the great majority of cases in Florida when negotiations are completed, the purchaser signs what is known as a “conditional sales contract” with a further proviso in most of them that they are to be approved by some designated officer or by some finance company. However, in the instant case the “used car order” was not a conditional sales contract. Rather, it was just what its name implies, an order for a used car. If the prospective purchaser had decided on the particular car described in the order, he was to return to the seller’s place of business on Saturday and complete the transaction, such as having the title transferred to him and presumably executing a conditional sales contract or making other arrangements concerning payment.
In Cox Motor Company v. Faber, Fla.App.1959, 113 So.2d 771, by the District Court of Appeal, First District, various Florida cases dealing with such contracts are analyzed. In the Cox case the trial court directed a verdict for the plaintiff against the dealer who had taken what was called “a Retail Buyer’s Order.” This order specifically provided that the purchaser agreed to purchase the automobile therein described on the terms and conditions set forth therein, but with a proviso that said order was not binding on said dealer until accepted by the dealer in writing. On the following day, January 8, 1957, the purchaser returned, the contract was accepted by the dealer’s sales manager on behalf of the dealer, and the automobile delivered to the purchaser. The purchaser on that day paid $50 and within several days thereafter made a further cash payment of $15. Thereafter, the purchaser was involved in an accident on February 7, 1957. The controversy arose by reason of a clause in the contract which read as follows:
“It is expressly agreed that the purchaser acquires no right, title or interest in or to the property which he agrees to purchaser hereunder until such property is delivered to him and either the full purchase price is paid in cash or a satisfactory deferred payment agreement is executed by the parties hereto, the terms of which shall thereafter be controlling.”
The trial court apparently interpreted this, clause as one wherein the seller retained “right, title or interest in or to the property”, but on appeal it was held that the control and authority of use had been, *697 transferred to the purchaser and it was specifically provided that the contract was completely binding when the dealer had accepted. In the instant case, until the purchaser had made satisfactory arrangements with the seller, which was to have been done on Saturday, we are faced, among •other things, with the clause in the order:
“Should this order be cancelled your deposit will be transferred to any other car or held by us at 10 per cent an-num until a satisfactory automobile can be found. No person however will sustain financial loss of a deposit, as your satisfaction is our first consideration.”
In view of this clause, when considered in connection with the entire instrument, and also in view of the fact that the purchaser had advised the seller on Thursday that he did not want the car and in further consideration of the testimony offered by the parties representing their respective positions, we hold that the trial judge did not commit error in permitting the issue of ownership to be passed upon by the jury.
Among the various Florida cases, we believe that Ragg v. Hurd, Fla.1952, 60 So.2d 673, has a persuasive effect. It is true that in that case there was no written contract, but from the wording of the agreement between the parties it was similar to the facts in the instant case. In the Ragg case the question of whether or not title had passed was a question for the jury, as in the present case.
It should be noted that we are passing on this case primarily under the common-law rules and not under the provisions of the Florida Motor Vehicle Law, Chapter 319, Flordia Statutes, F.S.A. No prejudicial error having been made to appear, the judgment is affirmed.
Affirmed.
KANNER, Acting C. J., and SMITH, CULVER, Associate Judge, concur.